IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DENNEMEYER & CO., LLC, & )
DENNEMEYER & CO., S.a.r.l., )
)
      Plaintiffs, )
)
v. )   Civil Action No Case No. 06 CV 2116 (RMC)
)
RALPH G. SCHROEDER )
)
      Defendant. )

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTIVE RELIEF**

Defendant, Ralph G. Schroeder ("Schroeder") by his counsel, Jeremy Simon of Thompson, Loss & Judge, LLP and Adrian Mendoza of Lillig & Thorsness, Ltd. states as follows in opposition to Plaintiff's, Dennemeyer & Co., LLC's Motion for Temporary Restraining Order.

**I.   There is not a substantial likelihood that Plaintiff will prevail on the merits involving the Vinsoft Asset Purchase Agreement.**

Dennemeyer & Co. LLC (a U.S. company organized under the laws of the Commonwealth of Virginia) seeks injunctive relief to enforce a non-competition provision contained in an Asset Purchase Agreement between Dennemeyer & Co Sarl a company organized under the laws of Luxembourg, and Vinsoft Solutions, Inc. The Amended Complaint maintains that as Vinsoft shareholder, Schroeder is bound by the Asset Purchase Agreement's terms and must proceed through arbitration. However, neither Vinsoft nor Dennemeyer Luxembourg has filed a petition for injunctive relief. A plaintiff must assert his own legal rights, not those of a third party. National Tank Truck Carriers v. Louis, 550 F.Supp. 113 (1982). Dennemeyer Americas is a separate company from Dennemeyer Luxembourg. Schroeder was never employed by Dennemeyer & Co. Sarl. Thus, Dennemeyer Americas lacks standing to seek injunctive relief based on the Asset Purchase Agreement.

However, if the court determines that the Asset Purchase Agreement is properly at issue, no basis exists to bring a cause of action against Schroeder based upon that agreement because he is not a party to it. If Schroeder was a shareholder at the time of the Asset Purchase Agreement he is not bound by its terms because he did not sign it or execute a contemporaneous non-competition agreement or stipulation to be bound by the terms. Stockholders are not bound by agreements of the corporations in which they hold stock, absent a specific agreement with respect thereto. *Cone v. Acme Markets, Inc.*, 41 A.D.2d 409, 343 N.Y.S.2d 765 (1973); *Prudential-Bache Metal Co., v. Binder*, 121 A.D.2d 923, 504 N.Y.S.2d 646 (1986); *see also*, *In re Matter of IMG Pub.*, 170 A.D.2d 268, 565 N.Y.S.2d 522 (1991) (contract to arbitrate not enforceable against individual who was neither party nor signatory); *Neiman v. Backer*, 167 A.D.2d 403, 561 N.Y.S.2d 811.

II. **Plaintiff will not prevail on the merits involving the Employment Agreement because Schroeder was released from any non-competition obligations.**

On October 16, 2006 Schroeder tendered a termination of employment letter (the "Termination Letter") to Plaintiff. A copy of the Termination Letter is attached hereto as Exhibit "A." Schroeder's termination was effective immediately and made pursuant to Section 7(f) of the Agreement which states, in part, as follows:

> (f) <u>Good Reason</u> - The Executive shall have the right to terminate his employment for Good Reason under the following circumstances: … (iii) a material diminution in the Executive's responsibilities or authority; (iv) failure on the part of Company to provide reasonable financial and/or human resources necessary to allow business performance success; … The date of termination of the Executive's employment under this Section 7(f) shall be the date the Executive gives the Company written notice of a termination for Good Reason setting forth the basis for such termination.

The Termination Letter set forth factors which demonstrated a material diminution in Schroeder's responsibilities or authority and a failure on the part of Plaintiff to provide reasonable resources necessary to allow business performance success. That Schroeder's termination was for

"good reason" is pertinent to the non-competition provision (Section 11) sought to be enforced by Plaintiff in light of Section 8(a) of the Agreement which states, in relevant part, as follows:

> (a) Upon any termination of this Agreement, all of the rights, privileges and duties of the Executive hereunder shall cease, except for his rights under this Section 8 and his obligations as defined under Sections 9, 10, 11 and 12 hereunder, *except that in the case of. ..Termination for Good Reason..., Executive's obligations under Section 11 shall not apply.*

Plaintiff has not disputed the basis of Schroeder's Termination of Good Reason. First, the Complaint does not contest that Schroeder's termination was for "Good Reason", and there is no request for a declaration to that effect. In paragraph 19 Plaintiff states that Schroeder "resigned" his employment. However, resignation of employment is addressed in paragraph 7(d) of the Employment Agreement while Schroeder's termination was expressly made under paragraph 7(f).

Second, Plaintiff's statements and actions did not dispute the basis for the termination, and Plaintiff realized substantial benefit by ensuring Schroeder that Plaintiff did not dispute the basis of his termination. Upon receipt of the Termination Letter, Plaintiff requested Schroeder to remain in his position so as to assist Plaintiff in transitioning, including assisting an interim president. Schroeder agreed and assisted in that transition, notwithstanding that the Employment Agreement provided that the Termination shall be on the date of written notice. During this transition period Plaintiff encouraged and supported Schroeder's communication with existing clients, sales prospects and staff, to ensure that no harm would be caused by the perception of Schroeder's departure. Schroeder provided such transition assistance for a period of thirty-one (31) days, up to and including November 15, 2006. During the transition Plaintiff repeatedly told Schroeder that it would not challenge the basis of his termination, including representations by Plaintiff's counsel that they were not aware of any objection to the basis of the termination, and that the only outstanding issue was to determine the compensation owed to Schroeder. In fact, on multiple occasions during the transition period, Plaintiff promised to make payments to Schroeder, but failed

to fulfill its promise. See Declaration of Ralph Schroeder attached as Exhibit "B." The basis for Schroeder's termination of employment remains "Good Reason." As a result, the terms of Section 8(a) of the Employment Agreement released Schroeder from any obligations of the non-competition provision and it is unlikely that Plaintiff has a substantial likelihood of success.

### III. There is no threat of irreparable harm to Plaintiffs because they have allowed other key employees with similar knowledge to become employed with their competitors.

A party seeking preliminary injunctive relief must demonstrate irreparable injury and failure to do so is sufficient to deny the request for relief. *CityFed Financial Corp. v. Office of Thrift Supervision*. 58 F.3d 738 (C.A.D.C. 1995). The injury must be actual and of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm. Second, the injury must be beyond remediation. *Bender v. Jordan*, 439 F.Supp.2d 139, 176 (D.D.C. 2006)

No danger of irreparable harm exists to Plaintiffs if the requested relief is not granted because there is no legitimate threat to Plaintiffs. Plaintiffs have consistently failed to maintain the confidentiality of the information now claimed as important and has permitted key employees with that information to compete against it. Former employees with knowledge of Plaintiffs' customer lists, pricing strategies, products and services have left Plaintiff's employ to join various competitors of Plaintiffs. See Exhibit "B" and Declaration of Kevin Nugent attached as Exhibit "C." Plaintiffs have allowed its so-called proprietary and confidential information to circulate to its competition and cannot now seek to "unring the bell" in order to claim irreparable injury.

Respectfully submitted,                                                    Dated: January 11, 2007

RALPH G. SCHROEDER

/s/ Jeremy S. Simon
Jeremy S. Simon, D.C. Bar No. 447956            Adrian Mendoza (pro hac vice)
THOMPSON, LOSS & JUDGE LLP                      LILLIG & THORSNESS, LTD.
Two Lafayette Centre                             1900 Spring Road, Suite 200
1133 21st Street, NW, Suite 450                  Oak Brook, IL 60523
Washington, DC 20036                             Telephone: (630) 571-1900

Telephone: (202) 778-4060    Facsimile: (630) 571-1042
Facsimile: (202) 778-4099

## CERTIFICATE OF SERVICE

I hereby certify that, on this 11[h] day of January 2007, I caused to be served a true and correct copy of the foregoing through the Court's ECF system to the party listed below.

Todd A. Bromberg
Wiley Rein & Fielding LLP
1776 K. Street, NW
Washington, D.C. 20006

Counsel for Dennemeyer & Co., LLC

/s/ Jeremy S. Simon
Jeremy S. Simon

October 16, 2006

Dennemeyer Shareholders and Management;

Pursuant to Section 7(f) of my Executive Employment Agreement, ("the Agreement"), I am as of today's date terminating my employment with Dennemeyer ("the Company").

This step represents the culmination of many factors that have, in the aggregate, resulted in a material diminution in my responsibilities and authority, and which has hindered my ability as President to be effective lead the U.S. business.

First, the lack of a fully legalized U.S. business, the failure to appoint me to a formal U.S. Board of Directors, and the failure to afford me direct participation in Luxembourg affairs - all of which are mandated by the agreement— has severely limited my ability to positively contribute to the Company and, ultimately, stifles the U.S. business, not to mention my personal career and financial growth. Second, the type and style of certain Shareholder's involvement in U.S. operations - often by contravening or circumventing my directives - seriously undermines my authority and disrupts business operations, not to mention causes staff instability, concern and confusion. Finally, there is a fundamental disagreement as to the financial and human resource support that is required to be successful in the U.S. market. I have, on numerous occasions raised all of these issues to the Company as serious concerns—to no avail. This list is intended to be illustrative, but not exhaustive of the impediments to success placed before me by the Company.

The following sums are due me from the Company and are payable at the next regular payroll on October 31, 2006:

| Type | Amount |
|---|---|
| Vacation payout - 20 days | $12,297 |
| 2005 performance bonus - 17.5% | $10,922 |
| Software commission - Current Payable | $9,471 |
| Software commission - Earned | $34,553 |
| Annuities commission | $3,500 |
| Section 7(f) provision - 8 months | $106,575 |
| TOTAL | $177,318 |

According to the applicable notice provisions, this termination is effective immediately. I have closed as many urgent matters as possible. If desired by the Company, I am willing to provide transition assistance. Otherwise I will vacate my office as of today October 16, 2006, and immediately return all Company property to the Chicago office.

Ralph G. Schroeder

"B"

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DENNEMEYER & CO., LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 06 CV 2116 |
| ) | |
| RALPH G. SCHROEDER ) | |
| ) | |
| Defendant. ) | |

## DECLARATION OF RALPH SCHROEDER

Ralph Schroeder, being first duly sworn on oath, deposes and states that if he were called to testify, he would do so to the best of her knowledge and belief as follows:

1. I was employed by Dennemeyer & Co., LLC ("Dennemeyer") as its President from November 2003 until October 2006.

2. Tina Powers was employed by Dennemeyer & Co., LLC ("Dennemeyer") as the General Manager – Annuity Services until August 2004. While employed by Dennemeyer Ms. Powers, among other responsibilities, provided sales support, conducted sales presentations and negotiated pricing and product availability on behalf of Dennemeyer. At the time Ms. Powers left Dennemeyer she had knowledge of the company's pricing structure, client lists, products, and services. In November 2004 Ms. Powers became employed by Computer Patent Annuities which is a competitor of Dennemeyer's.

3. Brian Roche was employed by Dennemeyer as the Director of Sales from February 2004 until April 2005. At the time Mr. Roche left Dennemeyer he had knowledge of the company's pricing structure, client lists, products, services and the DIAMS-XE (formerly Vinsoft) software application. Shortly after leaving Dennemeyer Mr. Roche became employed by Computer Patent

Annuities which is a competitor of Dennemeyer's and remains employed there as of this date to the best of my knowledge.

4. Lisa Young was employed by Dennemeyer as the Director of Annuities until February 2005. At the time Ms. Young left Dennemeyer she had knowledge of the company's pricing structure, client lists, products and services. Shortly after leaving Dennemyer Ms. Young became employed by Computer Patent Annuities which is a competitor of Dennemeyer's and remains employed there as of this date to the best of my knowledge.

5. Lisa Hecht was employed by Dennemeyer as the Director of Software Implementation until November 2003. At the time Ms. Hecht left Dennemeyer she had knowledge of the company's pricing structure, client lists, products and services. Shortly after leaving Dennemyer Ms. Hecht became employed by Computer Patent Annuities which is a competitor of Dennemeyer's and remains employed there as of this date to the best of my knowledge.

6. Alex Miller was employed by Dennemeyer & Co., Sarl as the Director of Sales until October 2005. Shortly thereafter Mr. Miller became employed by Computer Patent Annuities which is a competitor of Dennemeyer's.

7. Alex Butler was my predecessor as President at Dennemeyer. Mr. Butler is now employed as a vice-president of sales for Master Data Center which is a competitor of Dennemeyer's.

8. Immediately following my Termination I was requested by Reinhold Nowak of Dennemeyer & Co to remain for an additional thirty (30) days in order to assist Dennemeyer with an orderly transition. Mr. Nowak stated that the basis for my termination was not an issue and the only outstanding matter was to determine how much compensation I was to receive. Based upon these

representations I agreed to assist in the transition and did so until November 15, 2006. During the transition period, I worked closely with Mr. Nowak, and my successor Mr. Kirk McInerney, to contact existing Dennemeyer clients, sales prospects and Dennemeyer employees to ensure that no harm would be caused by the perception of my departure. Mr. Nowak reassured me several times during the transition period that the basis for my termination would not be challenged, Dennemeyer would not seek enforcement of the non-competition provision of the Employment Agreement, and that Dennemeyer was calculating the amount of compensation due me. I never received any amounts due to me.

I, Ralph Schroeder, declare under penalty of perjury and as provided by law, that the statements set forth in this declaration are true and correct based upon my personal knowledge, except as to matters stated to be on information and belief, and as to such matters, the undersigned certifies as aforesaid that she verily believes the same to be true

Executed on January 11, 2007.

*/s/ Ralph Schroeder*
Ralph Schroeder

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DENNEMEYER & CO., LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06 CV 2116 |
| | ) | |
| RALPH G. SCHROEDER | ) | |
| | ) | |
| Defendant. | ) | |

### DECLARATION OF KEVIN NUGENT

Kevin Nugent, being first duly sworn on oath, deposes and states that if he were called to testify, he would do so to the best of his knowledge and belief as follows:

1. I am a citizen of the State of Illinois.

2. In January of 2000 I was hired by Dennemeyer & Co., LLC as the Customer Support Manager. I left Dennemeyer & Co., LLC in December 2005 with the same title.

3. While employed by Dennemeyer & Co., LLC my duties included product installation, client technical support and project management.

4. At the time I left the employ of Dennemeyer & Co., LLC I had full knowledge of Dennemeyer & Co., LLC customer lists and Dennemeyer & Co., LLC products and services. I also had partial knowledge of Dennemeyer & Co., LLC's pricing structure and intermediate knowledge of Vinsoft software application.

5. In January 2006 I became employed by Foundation/IP which is owned by Computer Patent Annuities. Computer Patent Annuities is a competitor of Dennemeyer & Co., LLC. I have never received a demand from Dennemeyer & Co., LLC that I cease working for Foundation/IP or Computer Patent Annuities.

I, Kevin Nugent, declare under penalty of perjury and as provided by law, that the statements set forth in this declaration are true and correct based upon my personal knowledge, except as to matters stated to be on information and belief, and as to such matters, the undersigned certifies as aforesaid that he verily believes the same to be true

Executed on December 18, 2006.

_____
Kevin Nugent

2